13083

DANTZLER, EX'X. v. NATIONAL SURETY CO. ET AL.

(157 S. E., 802)

464

May, 1929.

*Messrs. Wolfe & Berry,* for appellant,

*Messrs. W. R. Symmes* and *Adam H. Moss,* for respondent,

March 3, 1931.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

The title of this case in the transcript of record appears as above. The evidence shows that it was brought by Carrie R. Dantzler as executrix of the will of John L. Ancrum; we assume that "etc." stands for that, although there is no reference in the complaint to the fact; it appears as a suit by her individually.

The action is against the defendant, National Surety Company, surety upon the bond of Mamie V. Dorrill and Henry Von Ohsen, Jr., as administratrix and administrator of the estate of Henry Von Ohsen, Sr., and certain persons, undisclosed by the record, included in the expression *"et al."*.

The uncontroverted facts appear to be as follows:

Henry Von Ohsen, Sr., died on October 23, 1923, intestate, leaving an estate of real and personal property appraised at about $30,000.00; his son Henry, Jr., and his daughter, Mamie V. Dorrill, were appointed administrator and administratrix of his estate, and qualified by giving a bond of $22,000.00 signed by the National Surety Company as surety.

At the time of the death of Henry Von Ohsen, there was an outstanding note and mortgage from him to John L. Ancrum for $4,000.00; in October, 1924, the plaintiff as executrix of the will of Ancrum filed a claim thereupon against the estate of Ohsen with the Probate Court of Orangeburg County.

In 1925, the plaintiff foreclosed the mortgage and recovered a judgment of $4,495.72 and a decree of foreclosure. The property was sold, and a credit of $1,822.10 passed to the debt. Later sundry payments were made by the administrators, reducing the debt as of August 2, 1928, the date of the commencement of the present suit, to $1,789.91.

On July 20, 1926, the widow of the intestate, Henry Von Ohsen, Sr., brought an action in the Court of Common Pleas of Orangeburg County, joining with her as plaintiffs certain other heirs at law of the intestate, against the personal representatives of the estate and certain creditors of the estate, including the plaintiff, Carrie R. Dantzler, as a judgment creditor, and others. The action was for the purpose of marshaling the assets of the estate, ascertaining the debts, settling the estate, and requiring an accounting by the personal representatives.

The plaintiff in the present action, Carrie R. Dantzler, a defendant in the action last referred to, filed an answer therein, in which she admitted the allegations of the complaint as to the necessity, on account of the negligence of the personal representatives in the management of the estate, of calling in the creditors, requiring the personal representatives

to account, and that the assets of the estate in the hands of the personal representatives be sold or collected and applied to the payment of the debts.

The personal representatives answered, denying the charges of maladministration, and filed a final account of their receipts and disbursements, showing that they had received $8,511.69 and paid out $8,508.62, leaving a balance to the credit of the estate of $3.07.

The case was referred to the Master, who took the testimony. It does not appear that he made a report. It does appear that all of the attorneys representing the several interests signed what was intended to be a final decree, dated February 1, 1927, but, which by some mischance or inadvertence was never signed by a Circuit Judge.

The paper declares in its preamble: "It appearing that the above case has been settled by agreement of the parties," and proceeds to direct:

1. That the Master demand immediate compliance by the purchasers of real estate sold under an order of Court in December, 1926. (A proceeding had, we assume, for the sale of real estate to pay debts, with which the personal representatives had nothing to do.)

2. That a certain balance in the hands of the sheriff from the sale of certain real estate under a judgment against the estate be turned over to the Master, and become a part of the funds of this case.

3. That a certain balance in the hands of the Master from the sale of the Orr land under foreclosure "shall become a part of the funds of this case."

4. That creditors be called in by advertisement.

5. That out of the funds so assembled by the Master he pay the costs of the case.

6. That next he shall pay the judgment of Carrie R. Dantzler.

7–11, 14. Provisions for the disposition of certain property, not pertinent to the present case, apparently under the

apprehension that the funds thereinbefore provided for would be sufficient to pay the claims of all creditors.

12. The withdrawal of claims for commissions and extra compensation made by the personal representatives.

13. "That the administrators of the said estate are hereby released from all other and further accounting as administrators, and shall be granted their discharge as such administrators, upon the payment of all claims against the said estate, which are hereinabove mentioned."

The confidence that the debts would all be paid out of the funds provided for in the hands of the Master appears to have been so great that no provision whatever was made for an accounting of the personal assets of the estate which remained in the hands of the personal representatives. The appraised value of them was $17,301.88, and only $8,511.69 accounted for.

The fact that the proposed decree was not actually signed by a Circuit Judge does not prevent its operation as an agreement between the parties to the action; it was actually signed by various attorneys representing certain interests, including the attorneys for the plaintiff in the present action, Mrs. Dantzler. The Master testified that he acted upon the tentative order as if it had been signed: "It was a proposed settlement of the whole case agreed to by the lawyers."

The effect of the agreement was to accept the return of the personal representatives as a correct statement of the receipts and disbursements of the personal property of the estate; it distinctly provides that they "are released from all further accounting"; an acknowledgment that there has been no devastavit. It also provides that they "shall be granted their discharge as such administrators upon payment of all claims against the said estate which are hereinbefore mentioned"; manifestly meaning payment out of the funds provided for.

It appears from the testimony of the Master that of the

$13,322.10 inventory of personal assets he had handled the following:

| | |
|---|---:|
| Savilla Orr, bond and mortgage | $2,470.00 |
| George Salley, bond and mortgage | 2,000.00 |
| Ben Davis, bond and mortgage | 2,000.00 |
| Total | $6,470.00 |

Whether the proceeds were paid to the personal representatives does not appear. What became of the difference $6,-850.10, we are not informed.

It appears that there was a balance of $425.87 in the hands of the sheriff from the sale of the land under foreclosure covered by a mortgage to Robinson. By an order of his Honor, Judge Mann, dated July 18, 1928, consented to by all of the attorneys, including those of the plaintiff, the sheriff was directed to pay this balance over to the Master, which was done, and was applied by him to the Dantzler deficiency judgment. The order further provided: " * * * And the administrators are discharged from further accounting and duties as such administrators."

In the complaint in the present action the plaintiff alleges:

"That on or about the 27th day of July, 1928, the said administrators were discharged from said trust or office by the Court"; evidently referring to the order of July 18, 1928, above mentioned. Counsel for the plaintiff in their printed argument say:

"The administrators had been discharged, folio 247 (where the order of Judge Mann is set forth). These are undisputed facts. * * * In the action brought in the Court of Common Pleas to settle this estate Judge Mann, on July 18, 1928, folio 247, made an order wherein the administrators were discharged in the following language, 'and the administrators are discharged from further accounting and duties as such administrators.' This order was consented to by all of the attorneys interested, including Mr. Symmes, who represented Mrs. Dantzler."

The first, second, fifth, sixth, and seventh exceptions cannot be considered, for the reason that they are plainly in violation of Rule 4, Section 6, of the Rules of this Court.

The third and fourth exceptions assign error on the part of the Circuit Judge in charging the jury that the discharge of an administrator does not relieve him or his surety from liability incurred before the discharge.

The case of *Beatty v. National Surety Co.*, 132 S. C., 45, 128 S. E., 40, lends an apparent color to this proposition, but an examination of it will disclose differentiating circumstances from those in the case at bar which make the principles declared therein inapplicable.

In the *Beatty case,* the infant distributee was not a party to the proceeding in the Court of Probate which resulted in the order discharging the administrator; being an infant, and not appearing by guardian *ad litem,* he did not consent, and could not have consented, to the order; in fact, he appears to have been forgotten or ignored until the suit was brought against the surety company; he had never had his day in Court, and necessarily could not have been bound by the adjudication and discharge.

In the case at bar, an action to marshal the assets, settle the estate, and force an accounting by the personal representatives, Mrs. Dantzler was a party defendant and filed an answer; the action was fully litigated and ended, if not by a judicial decree, by a writing signed by all of the attorneys in the case, including those of Mrs. Dantzler, professing to have been executed in conformity with an agreement of settlement, in which it was specifically stipulated that no further accounting should be made by the administrators and for their discharge. This was followed by an order of the Court similarly consented to, expressly discharging the administrators from their trust or office.

As a matter of fact, the principal point discussed and decided in the *Beatty case* was whether a complaint which did

not allege a previous judicial determination of devastavit was demurrable; it was held not.

To sustain the plaintiff's action would clearly amount to a collateral attack upon a judgment discharging the administrators in an action to which she was a party, and in which she actually formally joined in written assent to their discharge.

The general rule is thus stated in 24 C. J., 1069:

"The final settlement of the accounts of an executor or administrator and his discharge ordinarily terminate the liability on the bond; it has the force and effect of a judgment, and precludes any action on the bond unless impeached and set aside in an appropriate proceeding."

The plaintiff is in this awkward predicament: If the unsigned order of February 1, 1927, was a discharge of the administrators, followed by the specific discharge of July 18, 1928, both consented to by her, the discharge released the surety as well as the administrators in the absence of a showing of fraud or other circumstance in equity invalidating the discharge; if the discharge was not effective as such, it certainly amounted to a release by Mrs. Dantzler of the liability of the administrators for the personal assets not accounted for, and therefore a discharge of the surety company.

As the refusal of the motions for a nonsuit and a directed verdict are not before us, the result must be a new trial.

The judgment of this Court is that the judgment of the Circuit Court be reversed, and that the case be remanded to that Court for a new trial.

MESSRS. JUSTICES BLEASE and CARTER and MR. ACTING ASSOCIATE JUSTICE MENDL L. SMITH concur.

MR. JUSTICE STABLER not participating.