**HYMAN et al. v. McLENDON et al.**

No. 5100.

Circuit Court of Appeals, Fourth Circuit.

Jan. 10, 1944.

M. W. Seabrook, of Sumter, S. C., and C. B. Ruffin, of Bishopville, S. C. (Royall & Wright, of Florence, S. C., and L. D.

Jennings, of Sumter, S. C., on the brief), for appellants.

Henry E. Davis, of Florence, S. C., and Samuel Want, of Darlington, S. C. (Henry C. Jennings, of Bishopville, S. C., on the brief), for appellees.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

PARKER, Circuit Judge.

This is an appeal by the trustee in bankruptcy of Dr. J. B. Lane from a judgment of the bankruptcy court denying recovery against R. W., W. E. and C. E. McLendon on allegations that these persons held property belonging to him and were liable to him in damages. In Lane v. McLendon, 4 Cir., 87 F.2d 1009, this court denied an appeal from an order revoking the discharge in bankruptcy of Dr. Lane and directing that a trustee of his estate be appointed. In Hyman, Trustee, v. McLendon, 4 Cir., 102 F.2d 189, we dismissed, as not having been taken within the time prescribed by statute, an appeal from an order of the bankruptcy court taking jurisdiction of the cause before us on the petition of the McLendons and referring it to a special master. And in Hyman v. McLendon, 4 Cir., 103 F.2d 294, we denied a petition for a writ of mandamus and prohibition to require the lower court to refrain from proceeding with the trial of the cause. Subsequently the lower court entered a decree denying recovery on the grounds of res adjudicata and estoppel, and the trustee in bankruptcy and the bankrupt have appealed.

The facts are fully set forth in the report of the special master and the opinion of the judge below. Those necessary to an understanding of the questions presented by this appeal may be summarized as follows: Dr. Lane had been engaged in extensive farming operations and in the year 1922 found himself in serious financial difficulties. He sought the advice and assistance of R. W. McLendon, an attorney of Bishopville, S. C., and on the advice of the latter executed to him a bond in the sum of $59,840 and a mortgage covering four tracts of land, two of which were subject to prior mortgages. Dr. Lane testifies that Mr. McLendon advanced no money at the time, or later, and that the bond and mortgage were executed merely for the purpose of protecting him if he should be required to make advancements. In 1927 the holder of the bond secured by the prior mortgage on one of the tracts of land brought suit for foreclosure and the tract was purchased at foreclosure sale by McLendon, who had title made to his brother, W. E. McLendon, one of the defendants herein. Lane testifies that there was an agreement that McLendon should buy in the land and hold it for him. In 1929 McLendon instituted a suit for the foreclosure of the mortgage that Lane had given him. A decree adjudging an indebtedness of $58,308.80 was entered in that suit and one of the tracts of land was sold by the Sheriff under foreclosure and bought by W. E. McLendon. It was later conveyed to the holder of a first mortgage on the tract for the amount of the mortgage debt.

On June 30, 1932, Lane, who was by this time represented by other counsel in no way connected with the McLendons, instituted a suit against the McLendons, alleging that the bond and mortgage executed to R. W. McLendon were executed upon the advice of the latter and upon the understanding that Lane would be held accountable for only such money as should actually be advanced, that the foreclosures had been made and the title to lands sold had been taken as it was upon the advice of McLendon and that Lane had been defrauded and overreached by McLendon. He asked that the McLendons be required to enter satisfaction of the judgment obtained in the foreclosure suit and that the Sheriff be enjoined from selling any of his land under execution.

On December 8, 1932, Lane and the McLendons entered into an agreement for the settlement of the matters of difference that had arisen. Under this agreement, a suit instituted by Lane and wife against the McLendons was to be dismissed; property described in that suit was to be sold and was to be bid in by the McLendons and conveyed to a person designated by Lane; and an order was to be entered by Lane described in the preceding paragraph denying the relief therein sought, excepting, however, from the operation of the order and from any indebtedness due the McLendons a tract of land allotted to Lane as a homestead and confirming the rights of the McLendons in all property sold or that might be sold under foreclosure in the suit instituted by McLendon in 1929. Pursuant to the settlement agreement, the McLendons executed the conveyance to the nominee of Lane provided for in the agreement; an order bearing the consent of

counsel, but not signed by the presiding judge, was filed of record on February 27, 1933, in the suit instituted by Lane; and on the following day the presiding judge signed and entered an order in the foreclosure suit instituted by McLendon in 1929. The last mentioned order recited that under the decree of foreclosure in that suit, dated October 14, 1929, tract No. 5 therein described, containing 4000 acres of land in Berkeley County, had been conveyed by the Sheriff of Lee County to W. E. McLendon on November 15, 1929; that since the institution of the suit and the signing of the decree tract No. 3 therein described, containing 80 acres, had been set off to Dr. Lane as a homestead, and that the plaintiff had agreed that his mortgage should not attach to the homestead; and that the plaintiff was not interested in a personal or deficiency judgment against the defendant, Dr. Lane, and had consented to the cancellation of such judgment. After these recitals, the order directed that the deficiency judgment be cancelled; that the sale of tract No. 5, described in the complaint and decree as 4000 acres in Berkeley County, be confirmed; that the property previously allotted to Dr. Lane as a homestead be exempted from any costs of the action; and that except as thus modified the decree of foreclosure dated October 15, 1929, with reference to the remaining tracts described in the complaint and in all other respects be ratified and confirmed.

On September 24, 1935, Dr. Lane filed a voluntary petition in bankruptcy and was adjudged a bankrupt. He listed debts in the amount of $24,045.63, including judgments amounting to $19,270.81, and assets of $3,700 including his homestead. No trust interest in lands and no claim against any of the McLendons was listed. It was thought that the assets disclosed did not justify the appointment of a trustee and no trustee was then appointed. Dr. Lane was granted a discharge on January 20, 1936. On May 28, 1936, he instituted a suit in the Court of Common Pleas of Lee County, South Carolina, asking against the McLendons substantially the same relief that he had asked in the suit above described, which he had instituted in 1932, charging R. W. McLendon with fraud and asking that the lands, which were embraced in the mortgage, be impressed with a trust and for an award of damages with respect to such of them as the court could not reach. On July 3, 1936, the McLendons,

who were defendants in the suit instituted in the state court, filed a petition with the court of bankruptcy asking that the discharge of the bankrupt be set aside, that a trustee of his estate be appointed and that the trustee be authorized to bring before the bankruptcy court for adjudication the matters involved in the suit in the state court. After a hearing on this petition, the bankruptcy court revoked the order of discharge and directed that a trustee in bankruptcy of the estate of the bankrupt be appointed. This court denied an appeal from that order. Lane v. McLendon, 4 Cir., 87 F.2d 1009. Later a trustee of the estate of the bankrupt was appointed and the bankruptcy court designated counsel to represent him in the prosecution of the claim against the McLendons.

On March 25, 1938, the McLendons filed petition in the bankruptcy court setting forth the pendency of the suit in the state court and asking the court of bankruptcy to adjudicate the matters there in controversy. Answer was filed to this petition by counsel for the trustee denying the jurisdiction of the court of bankruptcy and alleging that exclusive jurisdiction in the matter rested with the state court. The District Judge, on September 1, 1938, entered an order striking out the answer of the trustee, enjoining him from proceeding with the prosecution of the suit in the state court, holding that exclusive jurisdiction to determine the matters in controversy rested with the court of bankruptcy, and referring these matters to a special master for hearing on the merits.

Three questions are presented for our consideration: (1) whether the lower court had jurisdiction to adjudicate the controversy; (2) whether Dr. Lane was bound by the settlement of December 8, 1932 and the court orders of the following February entered pursuant thereto; and (3) whether this settlement is binding upon his trustee in bankruptcy. We think that all of these questions should be answered in the affirmative.

On the question of jurisdiction, it is perfectly clear that, since the suit was to recover or impress a trust on property not in the possession of the bankrupt and adversely claimed by others, the bankruptcy court would have had no jurisdiction of the controversy if the McLendons had objected. In such case suit must be brought in the court that would have had jurisdiction in the absence of bankruptcy.

11 U.S.C.A. § 46. It is well settled, however, that the bankruptcy court does have jurisdiction of such a controversy if the parties consent. Page, Trustee, v. Arkansas Natural Gas Corp., 286 U.S. 269, 52 S.Ct. 507, 76 L.Ed. 1096; McDonald v. Plymouth Trust Co., 286 U.S. 263, 52 S.Ct. 505, 76 L.Ed. 1093; People's Nat. Bank v. Green, 4 Cir., 296 F. 294; James Talcott, Inc. v. Glavin, 3 Cir., 104 F.2d 851; Bachman v. McCluer, 8 Cir., 63 F.2d 580; In re Bennett, 7 Cir., 285 F. 351. And the parties consented here. It is said that there was no consent on the part of the trustee in bankruptcy; but the trustee in bankruptcy was an officer of the court and could have no will with respect to the matter contrary to the court's direction. Consequently when the McLendons petitioned the court to adjudicate the matter in controversy and the court ordered that this be done, the consent of the trustee followed the order. In re Hadden Rodee Co., D. C., 135 F. 886; Remington on Bankruptcy, 4th Ed., vol. 5, p. 345, sec. 2200. The trustee, upon his appointment and qualification, became vested with the entire interest in the property involved in litigation and all claims for damages with respect thereto, and Dr. Lane had no further power over the litigation. The court might have directed the trustee to obtain an order of substitution and proceed in the litigation which Dr. Lane had instituted in the state court; but when the defendants by their petition submitted themselves to the jurisdiction of the bankruptcy court and asked that the rights of the trustee as against themselves be there determined, there can be no question as to the court's power to make the determination. Directly in point is the case of People's Nat. Bank v. Green, supra, 4 Cir., 296 F. 294, 297, where this court, speaking through the late Judge Rose, said: "The purpose of a plenary suit is to bring in one who has not voluntarily made himself a party to the proceedings in bankruptcy. It is unnecessary, even as against an adverse claimant who has of his own motion submitted his rights to the determination of the court in bankruptcy. In re Hollingsworth & Whitney Co. [1 Cir.], 242 F. 753, 155 C.C.A. 341. The law says he may not be compelled to come into the bankruptcy cause and cannot be forced to answer otherwise than in a plenary suit. All this, however, is merely for his protection, and he may waive it (Salsburg v. Blackford [4 Cir.], 204 F. 438, 122 C.C.A. 624) as he does if, of his own motion, he comes into the bankruptcy court and asks it to determine what rights, if any, the trustee has in particular property."

There is no merit in the contention that the state court first acquired jurisdiction over the res. All rights of the bankrupt with respect to matters involved in the state action were vested in the trustee in bankruptcy who was never made a party to that action. Assuming that the bankrupt had a right to commence the action when no trustee had been appointed, it is clear that upon the appointment of the trustee, the latter had the right, under the orders of the bankruptcy court, either to pursue the action or to abate it and begin another action. Johnson v. Collier, 222 U.S. 538, 540, 32 S.Ct. 104, 56 L.Ed. 306. By beginning such action, the bankrupt could not in any way limit the power of the court with respect to the bankrupt's property, particularly when it appears that delay in the appointment of the trustee was due to his wrongful failure to list among his assets the property and claims which were the subject of the action. Cf. First Nat. Bank v. Lasater, 196 U.S. 115, 25 S.Ct. 206, 49 L.Ed. 408.

There is nothing in the cases upon which appellants rely which in any way supports their contention as to lack of jurisdiction. Johnson v. Collier, supra, holds merely that pending the appointment of a trustee the bankrupt may sue for the protection of assets belonging to the estate, with right on the part of the trustee, when appointed, either to carry on the action for the benefit of the estate or to begin a new action. Danciger v. Smith, 276 U.S. 542, 48 S.Ct. 344, 72 L.Ed. 691, holds merely that, in a suit instituted by a bankrupt in the absence of the appointment of a trustee, the adjudication of bankruptcy is not a defense of which the defendant may avail himself. Neither case is authority for the position that the bankruptcy court is without jurisdiction to adjudicate a claim prosecuted by the trustee against persons who consent to the jurisdiction, merely because the bankrupt has instituted a prior action with respect to the claim in another court.

On the second question, we can think of no principle upon which the bankrupt should not be held bound by the settlement of December 8, 1932, and the court orders of the following February. He was not at that time represented by R. W. McLendon but by independent counsel; and,

even though a presumption of fraud might have attached to the McLendon mortgage and there might have been grounds for declaring a trust with respect to the property purchased by the McLendons at foreclosure because of the relationship theretofore existing between the parties, this relationship had come to an end and there was at the time of the settlement, nothing in the relationship of the parties, or otherwise, that would render the settlement invalid. The settlement disposed of all the matters in controversy between the parties, including those here in litigation. It was evidenced by writing and was signed by Dr. Lane or his attorney and was consequently binding with respect to real estate as well as to other property. It was binding whether made a matter of court record or not; but it was made a matter of record. A consent order was filed in the suit instituted by Lane embodying the provisions of the settlement, and, while this order was not signed by the judge, it is not necessary to the validity of a judgment that it be signed. 30 Am.Jur. 833; note, 30 A.L.R. 715, and cases cited. An unsigned judgment or order, in any event, will be given effect as a contract between the parties. Dantzler v. National Surety Co., 159 S.C. 463, 157 S.E. 802. Furthermore, the order entered the next day, which dealt with the matters here in controversy, was duly signed by the judge; and we see no reason why it should not be given full effect under the doctrine of res adjudicata. As was well said by the judge below: "The petitioners claim that the order of February 28, 1933, in the early foreclosure case of McLendon v. Lane, confirmed and ratified all of the agreements and settlements, and that it amounted to an adjudication of all the issues between the parties and that although the proposed orders in the two suits by Lane against McLendon were never actually signed, and therefore, did not become orders of the court, nevertheless, they amounted to agreements by the parties of settlement of the issues and should be considered as in effect consents and agreements that the issues were settled in the final order of February 28, 1933, above referred to. They also claim that that order should be considered a final adjudication since the parties were all before the court, the stipulations and order were taken practically simultaneously, and the order of Judge Rice must have, and did, contemplate all of the agreements reached in the various suits and is to be considered as a final adjudication so as to render all the matters herein before the court res adjudicata. It appears to me that this view of the matter is a correct one and that when the various parties made these settlements and entered into the respective stipulations and agreements, same being in the form of orders, though never signed, and when they filed them in the respective causes and took an order of court actually signed by the same judge presiding in the court and having supervision of all three of the cases, that this order was taken with full knowledge of all the stipulations and agreements and with a view to ending all matters in issue for all time. And I am, therefore, of the opinion that the order of February 28, 1933, by Judge Rice, amounted to a final adjudication and that Dr. Lane is, and was, precluded from any further relief in the premises. See Johnston-Crews Co. v. Folk, 118 S.C. 470, 111 S.E. 15; Bartell v. Edwards, 113 S.C. 217, 102 S.E. 210; Baitary v. Gahagan, 195 S.C. 520, 12 S.E.2d 735."

And we think that the trustee in bankruptcy is precluded from recovery by the settlement which is binding upon Lane. The trustee has no greater rights than the bankrupt and his creditors had with respect to the matters involved in litigation. Lane had no rights after the settlement and we think it clear that his creditors had none. The effect of the settlement was to wipe out any claim against the McLendons and transfer to them absolutely any property as to which a trust was claimed. There is nothing to indicate that the settlement or any transfer which may have resulted therefrom was intended to hinder, delay or defeat the rights of creditors and no reason why it should not be given effect as against the creditors of Lane as well as against him. Cf. Tiffany v. Lucas, 15 Wall. 410, 21 L.Ed. 198; Collier on Bankruptcy, 13th Ed., vol. 2, p. 1563. The trustee would not, of course, be bound by a fraudulent settlement even if reduced to judgment (cf. Pepper v. Litton, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281); but there is no evidence of fraud in the settlement here and no reason to disregard the court order entered pursuant thereto. Creditors can have no rights with respect to the property here sought to be reached if the order of February 28, 1933, in the foreclosure suit is given effect; and there is no reason that we can see why it should not be given effect, having been entered by a court of

competent jurisdiction when Lane was before the court represented by able and loyal counsel in no way connected with the McLendons.

The point last discussed has not been stressed in the briefs of counsel, possibly because, as we understand from the argument, the greater portion of the debts listed by the bankrupt are owing to the McLendons or to corporations owned or controlled by them and there would be little advantage or disadvantage to anyone from a recovery by the trustee accruing solely to the benefit of these creditors. The real controversy here is between Lane and the McLendons and it has been so presented. As stated above, we think that Lane was clearly bound by the settlement embodied in the court orders of February 1933, and the trustee is in no better situation. If he were, the matter would have little practical significance, since the estoppel against Lane would mean that, as a practical matter, recovery by the trustee would be limited to the amount of the bankrupt's debts and would be returned to those from whom recovery was made or to corporations controlled by them.

For the reasons stated, the judgment appealed from will be affirmed.

Affirmed.