**Lawrence JENSON et al., Appellants,**

**v.**

**CONTINENTAL FINANCIAL CORPORATION et al., Appellees.**

**No. 78–1123.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 13, 1978.

Decided Feb. 2, 1979.

James H. Levy, St. Paul, Minn., for appellants; Charles S. Zimmerman, Simon, Schneider & Zimmerman, and Edward W. Glickman, Minneapolis, Minn., on briefs.

Sheridan J. Buckley, Jr., St. Paul, Minn., for appellees; Michael J. Iannacone, III, St. Paul, Minn., on brief.

Before VAN OOSTERHOUT, Senior Circuit Judge, LAY and BRIGHT, Circuit Judges.

VAN OOSTERHOUT, Senior Circuit Judge.

This is a timely appeal from orders of the district court[1] filed December 20, 1977, as amended March 20, 1978. The December 20th order denies plaintiffs' motion for final approval of a settlement between class plaintiffs and defendants upon the ground that the settlement agreement is an executory contract within the meaning of 11 U.S.C. § 110(b), and that by reason thereof the trustees of the bankrupt defendants were entitled to and did reject the settlement. The amended order filed on March 20th declares that a security agreement entered into by the parties contemporaneously with the settlement agreement is null and void.

Lawrence Jenson and nineteen other named plaintiffs brought this class action on their own behalf and on behalf of all similarly situated customers of Continental Coin Exchange, Inc., who had purchased precious metals on margin and suffered

1. The Honorable Edward J. Devitt, Chief Judge, United States District Court for the District of Minnesota.

damages as a result. The defendants include Continental Coin Exchange, Inc., Continental Financial Corporation, and other related companies, as well as their officers, directors and major stockholders. The complaint alleged violation of the Federal Securities Act of 1933, 15 U.S.C. § 77a, *et seq.*, and the Securities and Exchange Act of 1934, 15 U.S.C. § 78a, *et seq.*, as well as pendent state law violations. Partial summary judgment was entered against the defendants[2] on the basis that the sale of precious metals on margin constituted the sale of securities under the federal statutes and that such securities were not registered as required. *Jenson v. Continental Financial Corporation*, 404 F.Supp. 792 (D.Minn. 1975). The determination of liability is not in dispute here.

After the determination of defendants' liability, the parties entered into a settlement agreement on January 9, 1976. The settlement agreement provided in part that the settling defendants were to pay $300,000 in four installments, forgive approximately $300,000 indebtedness of the plaintiff class, and to pay administrative expenses as they become due.[3] In return, the plaintiffs were obligated to execute a covenant not to sue the settling defendants upon approval of the settlement agreement by the court and class. Due to the fact that the settlement agreement gave the defendants one year in which to pay the cash settlement amount, the settlement was secured by a mortgage and a security agreement. The security agreement provided that, in consideration of forebearance by the plaintiffs in moving for the immediate appointment of a receiver for the defendants, defendants granted to plaintiffs' trustee a security interest in specific property turned over as collateral including a boat, furniture, fixtures, equipment and $250,000 of inventory in dental supplies, precious metals and accounts receivables. The security agreement also provided that the security interest would not only secure the payments under the settlement agreement, but would also secure any judgment for money damages in the event that the settlement failed for any reason.

A stipulation which incorporated the settlement and security agreements received preliminary approval from the district court on January 15, 1976. Based upon the stipulation the court entered an order appointing Charles Zimmerman as trustee for the plaintiffs to hold the settlement proceeds and security interest as security for the settlement. Notice of the proposed settlement was directed to the class by an order of the district court dated March 16, 1976. This order also set June 7, 1976, as the date for a hearing on the fairness of the settlement to the absent class members pursuant to Rule 23, Fed.R.Civ.P.

Prior to the date set for the fairness hearing but more than four months after the parties had entered into the settlement and security agreements, an involuntary petition in bankruptcy was filed against the corporate defendants by a third party.[4] On August 12, 1976, the district court denied final approval of the settlement without prejudice based upon Section 11a of the Bankruptcy Act, 11 U.S.C. § 29(a), which stays litigation pending against a bankrupt prior to a discharge in bankruptcy.

Thereafter, the trustees of the bankrupt defendants moved the district court to de-

---

2. The summary judgment was entered against the corporations and their officers and directors who participated in the sale of precious metals to the public.

3. Plaintiffs asserted damages in excess of $3.2 million. The premise for the settlement was the fact that Continental Financial Corporation had a net worth of less than $300,000 as of August 31, 1975. In the event that the corporation was placed in receivership its liquidating value would have been substantially less than $300,000.

4. IDS Properties, Inc., defendants' former landlord, filed the involuntary petition in bankruptcy against Continental Financial Corporation, Continental Coin Exchange, Inc., and Numisco Sales on May 24, 1976. On October 26, 1976, the proceedings were converted to proceedings under Chapter XI. On January 26, 1977, the corporations were adjudicated bankrupt. On January 27, 1977, defendant General Refineries filed a petition under Chapter XI and was adjudicated bankrupt on July 21, 1977.

clare that the legal relationship created by the settlement agreement, the security agreement, and the stipulation and order dated January 15, 1976, was an executory contract rejected by the trustees and that the security agreement purported to be created thereunder was null and void. The plaintiffs renewed their motion for final approval of the settlement pursuant to Rule 23. In its order dated December 20, 1977, as amended March 20, 1978, the district court denied final approval of the settlement and granted the motion of the bankrupts' trustees. The district court also ordered plaintiffs' trustee to account and deliver to the bankrupts' trustees all the property which had come into his possession in his capacity as trustee.

The proper resolution of the primary issue in this cause involves an inquiry into the meaning of the term "executory contract" in the context of Section 70b of the Bankruptcy Act, 11 U.S.C. § 110(b). Section 70b confers upon the trustee in bankruptcy the power to assume or reject the executory contracts of the bankrupt. The Act does not define the term "executory contract". In a general sense, as long as any part of a contract remains unperformed, the contract is executory. In the context of the Bankruptcy Act, however, the term "executory contract" takes on a more limited meaning in light of the purposes for which the trustee is given the option to assume or reject. Similar to the trustee's power to abandon or accept other property, this option is to be exercised in situations where the estate will be benefitted and not where the only effect of its exercise would be to convert a contractor's claim into a first priority expense of administration. V. Countryman, *Executory Contracts in Bankruptcy: Part I*, 57 Minn.L.

Rev. 439, 450–52 (1973); 4A *Collier on Bankruptcy* ¶ 70.43 (14th ed. 1976). In *Northwest Airlines, Inc. v. Klinger*, 563 F.2d 916 (8th Cir. 1977), this court adopted the following definition of an executory contract in the context of the Bankruptcy Act:

'a contract under which the obligations of both the bankrupt and the other party to the contract are so unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other.' V. Countryman, *Executory Contracts in Bankruptcy: Part I*, 57 Minn.L.Rev. 439, 460 (1973). *See also* V. Countryman, *Executory Contracts in Bankruptcy: Part II*, 58 Minn.L.Rev. 749 (1974).

*Id.* at 917.[5] Thus, where the contractual obligations of the bankrupt and the other contracting party remain at least partially and materially unperformed at bankruptcy, the contract is executory. *In re American Magnesium Co.*, 488 F.2d 147 (5th Cir. 1974); *In re Universal Medical Services, Inc.*, 325 F.Supp. 890 (E.D.Pa.1971), aff'd 460 F.2d 524 (3d Cir. 1972); *Gulf Petroleum, S. A. v. Collazo*, 316 F.2d 257 (1st Cir. 1963); *Workman v. Harrison*, 282 F.2d 693 (10th Cir. 1960).

### The Settlement Agreement.

Under the foregoing analysis it is clear that the settlement agreement entered into by the parties in the instant case is an executory contract subject to rejection by the bankrupts' trustees. As of the date of the filing of the involuntary petition in bankruptcy against the corporate defendants, the parties had substantial and material obligations to perform in the future under the terms of the settlement agreement. The defendants had yet to make the

---

5. Under this definition, for example, a contract to which the nonbankrupt party has *fully* rendered its performance, but the bankrupt has performed partially or not at all, is not "executory" in the sense of the Bankruptcy Act. In such a situation, a rejection by the trustee would neither add to nor detract from the estate's benefit or liabilities. Generally, an assumption would not benefit the estate but would only convert the nonbankrupt's claim

into a first priority administrative expense to the prejudice of other creditors of the estate. Under such circumstances the trustee does not have the option to assume or reject the contract. *Northwest Airlines, Inc. v. Klinger, supra*, 563 F.2d at 917, n.2; V. Countryman, *Executory Contracts in Bankruptcy, Part I, supra*, at 451–52; 4A *Collier on Bankruptcy* ¶ 70.43[2] at 522 (14th ed. 1976); *see also In re Forney*, 299 F.2d 503 (7th Cir. 1962).

final installment payment of $125,000 while the plaintiffs had yet to execute a covenant not to sue the settling defendants. These duties were not only material but were the central obligations under the settlement agreement. Thus, the failure of either party to perform its obligation at this point would constitute a material breach excusing the performance of the other. Since the bankrupts had substantially performed but had not received a material benefit (i. e., the covenant not to sue) under the settlement agreement, the trustees in bankruptcy could properly reject it as executory under Section 70b.[6] Therefore we affirm that part of the district court's order declaring that the settlement agreement is executory.

### The Security Agreement.

■ The trustees for the bankrupts argue, and the district court apparently concluded, that the security agreement was such an integral part of the settlement agreement that it too should be considered executory. However, by its own terms the security agreement was given to secure payment by the defendants *either* upon the settlement as approved by the court and class *or* for the entry of judgment for money damages, whether absolute or contingent, in the event of the failure of the settlement agreement for any reason. Thus, even though the settlement agreement failed to receive final approval by the court, the security agreement stood separate and distinct from the settlement agreement to secure any recovery by the plaintiffs. Neither court approval of the settlement agreement nor execution of the covenant not to sue by plaintiffs was required for the security agreement to become effective.[7]

■ Considered separately, the security agreement is not executory. The consideration given for the security interest was forebearance on the part of the plaintiffs from pressing for the immediate appointment of a receiver for the defendants. This consideration was performed in full by the plaintiffs and the bankrupts have had the full benefit thereof. As such, the trustees have no power to reject the security agreement as executory under Section 70b.[8] Therefore, the district court erred in declaring that the security agreement was executory, null and void.

■ In addition to declaring that the settlement and security agreements were executory and void, the district court ordered plaintiffs' trustee to account to and deliver to the defendants' trustees all property which has come into his possession in his capacity as trustee. We have held, however, that the settlement agreement is executory, while the security agreement remains valid to secure any recovery by the plaintiffs. We therefore modify the order

---

6. Plaintiffs cite *Hyman v. McLendon*, 140 F.2d 76 (4th Cir. 1944) as authority for the proposition that settlement agreements entered into prior to the bankruptcy of the debtor are binding on the debtor and his trustee in bankruptcy. Unlike the instant case, however, the obligations under the settlement in *Hyman* had been fully performed by all the parties to it well before the onset of bankruptcy. Here, each of the parties has not fully performed its material obligations under the settlement agreement and the trustee has the option to reject it.

7. The trustees for the bankrupts argue that the security interest was not perfected because without court approval of the settlement agreement there was no enforceable obligation to which the security agreement could attach. This argument rests upon the mistaken notion that a security interest may not secure a contingent liability. Minnesota law does not re-

quire a secured obligation to be liquidated or non-contingent. See Minn.Stat. § 336.9 *et seq.*

The trustees for the bankrupt also contend that Fed.R.Civ.P. 23(e) requires that the security interest be voided as detrimental to the rights of the general creditors of the bankrupts and of the former class members who chose to opt out and maintain their own action. The purpose of Rule 23(e), which prohibits class actions from being dismissed or compromised without court approval, is to protect the rights and interests of absent class members. Optouts and general creditors are not members of the class and hence are not entitled to the protection of Rule 23(e). Wright & Miller, *Federal Practice and Procedure*, § 1797 (1977); *Norman v. McKee*, 431 F.2d 769, 774 (9th Cir. 1970); *Kusner v. First Pennsylvania Corp.*, 74 F.R.D. 606 (E.D.Pa.1977), aff'd 577 F.2d 726 (3d Cir. 1978).

8. See note 5, *supra.*

of the district court to require plaintiffs' trustee to account to and deliver to defendants' trustees only that property which has come into his possession in his capacity as trustee under the terms of the settlement agreement. Plaintiffs' trustee shall not now be required to account to and deliver to defendants' trustees any property which is subject to the security agreement.

The orders of the district court are affirmed in part, reversed in part, and modified as set forth herein. The case is remanded to the district court for further proceedings consistent with this opinion.