839 F.2d 1517
 Bankr. L. Rep. P 72,243
In re FIDELITY STANDARD MORTGAGE CORP., f/k/a S.B.I.
Investors Corp., and First Fidelity Financial
Services, Inc., Debtors.
Rebecca DARWIN, a/k/a R.R. Darwin, Plaintiff-Appellant,
v.
Jeffrey H. BECK, Successor Trustee to A.W. Beck, Defendant-Appellee.
 No. 87-5007.
 United States Court of Appeals,
Eleventh Circuit.
 March 17, 1988.
 
 1
 Reggie D. Sanger, Ft. Lauderdale, Fla., for plaintiff-appellant.
 
 
 2
 Chad P. Pugatch, Ft. Lauderdale, Fla., for defendant-appellee.
 
 
 3
 Appeal from the United States District Court for the Southern District of Florida.
 
 
 4
 Before JOHNSON and ANDERSON, Circuit Judges, and ATKINS*, Senior District Judge.
 
 ATKINS, Senior District Judge:
 
 5
 Mrs. Rebecca Darwin appeals a district court affirmance of the bankruptcy court's ruling that she is not entitled to any interest in, or proceeds from two mortgages because the mortgages are the property of the bankrupt estate. WE AFFIRM.
 
 BACKGROUND
 
 6
 Mrs. Darwin was investing in fractionalized interests in mortgages through the debtors, First Fidelity Financial Services, Inc. and Fidelity Standard Mortgage Corporation. Funds she advanced for this purpose were retained in escrow for eventual placement by the debtors into various mortgage interests. She received interest on these funds from the time they were placed with the debtors, regardless of whether they were held in escrow or they were invested in a mortgage. As mortgages were paid off, or at the request or agreement of an investor, funds would be "rolled out" or "rolled over" into either another mortgage or into the escrow account.
 
 
 7
 Mrs. Darwin held interests in many of the debtors' mortgages. She received monthly checks from the debtors reflecting the interest payments on her mortgage interests and funds held in escrow. The investments were described on the check stubs. Where funds had been invested into a mortgage, the investments would be designated by the name of the mortgagor, while the terms "interest," "investment," or "escrow" were used interchangeably to designate funds held in escrow. The bankruptcy court found that Mrs. Darwin took great care each month to clip and retain the check stubs in order to confirm the status of her investments. Findings of Fact and Conclusions of Law at 2.
 
 
 8
 Among Mrs. Darwin's investments were the "Wright" mortgage and the "Ivy" mortgage. Her August 1981 check stub read as follows:In November 1981, the name "Wright" was not included on the check stub, and was replaced with the words, "Interest on $21,000.00."
 
 
 9
 In December 1981 the name "Ivy" was not included on the check stub, and was replaced with the word "Investment."
 
 
 10
 Mrs. Darwin's check stubs contained neither the name "Wright" nor the name "Ivy" after December 1981. Records of the debtors from the same time period, introduced into evidence in the bankruptcy court, indicate that Mrs. Darwin's interests in these mortgages had been converted to escrow.
 
 
 11
 The debtors filed voluntary Chapter 7 petitions on April 9, 1982. The proceedings were subsequently converted to Chapter 11 reorganization, and then reconverted to Chapter 7 liquidation after that. As a result of the bankruptcy proceedings, investors holding specific mortgage interests were entitled to retain their interest in them, while those with funds in escrow were treated as general unsecured creditors. Mrs. Darwin did not object to the roll out of the Wright and Ivy mortgages until after the debtors' Chapter 7 filing, and its subsequent conversion to Chapter 11 reorganization.
 
 
 12
 Mrs. Darwin thereafter engaged in a series of transactions with the debtor in possession in which she sought to regain her interests in the Wright and Ivy mortgage. She reassigned her interest in the Wright mortgage to the debtors. A dispute arose concerning the Ivy mortgage. Mrs. Darwin had signed a Satisfaction of Mortgage on the Ivy mortgage on November 15, 1981, around the time of the roll out. The debtors, however used reassignments and satisfactions interchangeably, and asserted that the Satisfaction has been erroneously executed. The parties agreed to execute another Satisfaction of this mortgage in order to facilitate its impending pay off, and to place the proceeds in escrow pending resolution by the bankruptcy court of the dispute. Finally, on December 10, 1982, Mrs. Darwin and the debtor in possession executed a Letter Agreement, in which the debtor in possession agreed to reassign her interest in the Wright mortgage, and in which the foregoing series of transactions was detailed. It is interesting to note that the Letter Agreement provides that Mrs. Darwin was to furnish the debtor in possession with an "Assignment" of the Ivy mortgage.
 
 
 13
 1) You will furnish us an Assignment of Mortgage back to Fidelity Standard Mortgage Corp. on the Ivy investment.
 
 
 14
 2) At the time this loan is refinanced and we are funded, we will place in trust with your attorney $9,918.24. This amount will be held in trust pending his seeking clarification from the Court on your rights to this money.
 
 
 15
 3) The monies will be disbursed to you or back to First Fidelity when the Court's decision is arrived at.
 
 
 16
 4) Simultaneously with funding of the Ivy mortgage, we will reassign you your interest in the Wright mortgage.
 
 THE ADVERSARY PROCEEDING
 
 17
 Mrs. Darwin commenced an adversary proceeding in bankruptcy court for declaratory relief and specific performance in which she sought a reassignment of her interest in the Wright mortgage and the turnover of the proceeds of the Ivy mortgage held in escrow. The trustee argued, as he does here, that the transactions show that Mrs. Darwin agreed to be rolled out of the two mortgage interests into the general escrow fund. He argued that the reassignment of the Wright mortgage and the satisfaction of the Ivy mortgage did no more than administratively clear up what had been previously agreed to by Mrs. Darwin by her acceptance of monthly interest checks. He further contended that the Letter Agreement between Mrs. Darwin and the debtor in possession was ineffective against him in his capacity as trustee post conversion to Chapter 7.
 
 
 18
 The bankruptcy court agreed and found that the interests in both mortgages were the property of the bankrupt estate. It held that the "clear intent" of the parties in the transaction reflects that Mrs. Darwin was rolled out of both mortgages, and "consented to same by the informed receipt and cashing of the monthly interest checks reflecting the change in status of these investments in November and December of 1981." Findings of Fact and Conclusions of Law at 4. In so holding, the bankruptcy court extended the standard articulated in In re Fidelity Standard Mortgage Corp., 36 B.R. 496 (Bankr.S.D.Fla.1983), in which the court held that the facts indicated that the assignment of a particular mortgage interest was "sufficiently complete" to be protected by 11 U.S.C., section 541(d), so as not to become property of the estate. The bankruptcy court reasoned that this "standard for measuring consent to an assignment provides equally strong evidence of an intent to a transfer out of a particular investment." Findings of Fact and Conclusions of Law at 5.
 
 
 19
 The bankruptcy court held that the Letter Agreement did not alter the fact that Mrs. Darwin had already rolled out of both mortgage interests. As to the Ivy proceeds, the court explained that the letter and circumstances made it clear that the proceeds of the mortgage were to be held in escrow pending resolution of the dispute concerning the ownership of the interest. "These issues have now been resolved favorable to the Trustee and he is entitled to a release of the proceeds of $9,000.00 into the general funds of the estate." Id. As to the Wright reassignment, the court held that the agreement to reassign the Wright mortgage was gratuitous and unenforceable against the Trustee, post reconversion of the proceeding to Chapter 7, on three grounds.
 
 
 20
 This agreement was without consideration and, to the extent that it constituted a settlement of contested issues was not approved by the Court as required by the applicable Bankruptcy Rules. The agreement to reconvey this interest would likewise constitute an invalid post-petition transfer pursuant to 11 U.S.C. Sec. 549(a). It is further clear that the waiver of the debtor's rights after the commencement of the case is not binding upon the estate or the Trustee pursuant to 11 U.S.C. Sec. 541(e). Under this principle, the Trustee may even reject a settlement agreement. See, ex, Jenson v. Continental Financial Corporation, 591 F.2d 477 (8th Cir.1979).
 
 
 21
 Id. at 5-6.
 
 APPEAL TO THE DISTRICT COURT
 
 22
 The district court affirmed. It held that there was more than ample evidence to support a finding that Mrs. Darwin had agreed to be rolled out of both the Ivy and Wright mortgages in the general business practices of the Debtors, the records of the debtors, Mrs. Darwin's dealings with the Debtors, her cashing of checks in which interest on "investment" or "interest" was indicated at rates different from the yields on the mortgages, and her provision of a satisfaction of the Ivy mortgage. The district court identified as "key" to understanding the Letter Agreement the erroneous execution of the first Satisfaction of the Ivy mortgage.
 
 
 23
 When the satisfaction was erroneously executed by [Mrs. Darwin], rather than an assignment of the mortgage interest back to Debtors, the stage was set for the erroneous filing of the satisfaction during the Chapter 11 phase. When the debtor in possession sought to correct the record, a dispute arose, as evidenced by Exhibits 2 and 12 and testimony before the bankruptcy court, as well as the language of the letter agreement. Given this evidence, the bankruptcy court correctly concluded that the letter agreement was not in the ordinary course of business and thus required court approval, see 11 U.S.C. Sec. 363, rendering the letter agreement unenforceable against [the Trustee].
 
 
 24
 Opinion at unnumbered page 3. The district court found it unnecessary to reach the alternative bases for the bankruptcy court's ruling, but noted that had the Wright mortgage actually been reassigned to Mrs. Darwin, the reassignment would have been a voidable post-petition transfer under 11 U.S.C. Sec. 549.
 
 THE PRESENT APPEAL
 
 25
 The bankruptcy court's findings of fact shall not be set aside unless clearly erroneous. Bankr.R. 8013. Our application of this standard of review is guided by the principles set forth in State Farm Mutual Automobile Ins. Co. v. Fielder (In re Fielder), 799 F.2d 656, 657 (11th Cir.1986).
 
 
 26
 [T]his court as an appellate court gives deference to all findings of fact by the fact finder if based upon substantial evidence, but freely examines the applicable principles of law to see if they were properly applied and freely examines the evidence in support of any particular finding to see if it meets the test of substantiality.
 
 The Roll Out
 
 27
 Title 11 U.S.C., section 541(d) excludes from the bankruptcy estate an investor's interests in mortgages:
 
 
 28
 Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, such as a mortgage secured by real property, or an interest in such a mortgage, sold by the debtor but as to which the debtor retains legal title to servicing of such mortgage or interest, becomes property of the estate under subsection (a) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.
 
 
 29
 (Emphasis added.) The legislative history indicates that the statute is intended to protect the secondary mortgage market:
 
 
 30
 The committee notes that in secondary mortgage market transactions the parties may characterize their relationship as one of trust, agency, or independent contractor. The characterization adopted by the parties should not affect the statutes (sic) in bankruptcy of bona fide secondary mortgage market purchases and sales.
 
 
 31
 S.Rep. No. 95-989, 95th Cong., 2d Sess. 84, reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5870.
 
 
 32
 The determination of whether the mortgage interest is the property of the investor or the bankruptcy estate turns on whether the interest has been sold to the investor prior to the commencement of the case. In In re Fidelity Standard Mortgage Corp., 36 B.R. at 500, the court held that this determination is a question of fact: "If, on the other hand, the particular facts represent a transaction in progress, with no sale complete ... it will not be protected by Sec. 541(d)." The court found that assignment of mortgage interests to three investors were sufficiently complete to be afforded section 541(d) protection by formulating the following standard in accordance with its legislative purpose:
 
 
 33
 If the investor and debtors agreed on what specific mortgage interest was to be assigned to the investor, with the debtors' assent being evidenced by any writing which links the investor and the specific mortgage interest; if the investor paid in full for the mortgage interest; and if that mortgage was in existence (having been funded and not repaid or foreclosed); then the [investors'] interests in the various mortgages should be protected under Sec. 541(d).
 
 
 34
 Id.
 
 
 35
 We hold that the bankruptcy court's findings that Mrs. Darwin's funds had been rolled out of both the Wright and Ivy mortgages prior to the commencement of the case, and that she consented to the roll out, are supported by substantial evidence, and that therefore the finding of the bankruptcy court was not clearly erroneous. It was the usual business practice of the debtors to distinguish between funds invested in specific mortgages and those retained in escrow on check stubs sent to investors along with their monthly interest checks. Funds invested into mortgages were designed by the name of the mortgagor, while funds retained in escrow were referred to interchangeably as "interest," "investment," or "escrow." It was also the usual practice of the debtors to roll funds out of specific mortgages when the mortgages had been paid off, or at the request or agreement of the investor. The debtor's records indicate that Mrs. Darwin's funds in the Wright and Ivy mortgages were rolled out of the investments, and into the general escrow funds in November and December 1981, respectively. Consistent with the records, Mrs. Darwin's check stubs indicated that payments were made on the Wright mortgage until November 1981 and on the Ivy mortgage until December 1981. Thereafter, the stubs indicated a change by the substitution of the words "interest" or "investment" for "Wright" and "Ivy." Mrs. Darwin carefully clipped and retained the check stubs prior to cashing the monthly interest checks in an effort to monitor the status of her investments. She did not object to the change in the designations on her check stubs until after the bankruptcy petitions were filed. This evidence supports the bankruptcy court's finding that Mrs. Darwin understood and agreed to the roll out of her Wright and Ivy investments, and that this occurred prior to the commencement of the bankruptcy proceedings. Under these circumstances, we hold that Mrs. Darwin's claimed interests in these mortgages are the property of the bankruptcy estate in accordance with section 541(d).
 
 The Letter Agreement
 
 36
 Having determined that the Wright and Ivy mortgage interests were the property of the bankruptcy estate, the bankruptcy court correctly determined that they could not be properly transferred pursuant to the Letter Agreement without court approval. 11 U.S.C.A. Sec. 363(b) (1979). Section 363(b) provides: "The trustee, after notice and hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." The bankruptcy court reasoned that the Letter Agreement represented a settlement of contested issues. Implicit in this determination, as the district court acknowledged, is a finding that the execution of the Letter Agreement was not in the ordinary course of business, and therefore was not enforceable against the trustee, post re-conversion to Chapter 7.
 
 
 37
 We agree with the bankruptcy and district courts. We hold that the transfer of property of the estate for purposes of settling a dispute is not within the ordinary course of business of the debtor, and that it requires the approval of the court pursuant to section 363. The Letter Agreement is therefore not enforceable.
 
 
 38
 Mrs. Darwin had signed a Satisfaction of Mortgage on the Ivy investment on November 15, 1981. When she sought to collect on this document after the bankruptcy proceedings had begun, she was informed by the debtors that a satisfaction had been erroneously executed, and a dispute arose between the parties as to her interest in the Ivy mortgage. The parties agreed to execute another satisfaction of the mortgage so that it could be paid off, and to place the proceeds in escrow pending resolution of the dispute by the court. They executed the Letter Agreement to memorialize the terms of their settlement, and included a provision for the reassignment of the Wright mortgage to Mrs. Darwin. As such, the agreement represents the settlement of contested issues, and it was not within the debtors' ordinary course of business. Its terms are not enforceable against the trustee, and therefore do not alter the roll out and Mrs. Darwin's consent to it. Approval of the bankruptcy court as to each purported transfer set forth in the agreement is required by Section 363, but was not obtained.
 
 
 39
 Having determined that the Letter Agreement is not enforceable, we find it unnecessary to reach the bankruptcy court's alternative holdings.
 
 
 40
 AFFIRMED.
 
 
 
 *
 Honorable C. Clyde Atkins, Senior U.S. District Judge for the Southern District of Florida, sitting by designation