**In re Reinhold R. WALKER and Martha (NMN) Walker, d/b/a Dairy Farmers, Debtors.**

**In re Frank C. LOUP and Dianna L. Loup, d/b/a Loup Dairy, a sole proprietorship, Debtors.**

**Bankruptcy Nos. 183–00101, 583–00143.**

United States Bankruptcy Court, D. South Dakota.

April 29, 1985.

John M. Fousek, Rapid City, S.D., for debtors Reinhold R. Walker and Martha (NMN) Walker, d/b/a Dairy Farmers.

James P. Hurley, Rapid City, S.D., for Debtors Frank C. Loup and Dianna L. Loup, d/b/a Loup Dairy, a sole proprietorship.

Robert M. Nash, Rapid City, S.D., for Northwest South Dakota Production Credit Association.

## MEMORANDUM DECISION

PEDER K. ECKER, Bankruptcy Judge.

These cases have been consolidated for the Court's resolution of the single legal issue of whether a debtor may retire or cancel Class B Participation Stock in a Production Credit Association as a part of its plan of reorganization under Chapter 11.

The facts in both cases are similar and are not in dispute. The Farm Credit Act of 1971 (12 U.S.C. § 2001, *et seq.*) requires P.C.A. borrowers to maintain Class B Stock in an amount equal to $5.00 for every $100.00 of credit loaned. Class B Stock is voting or participation stock and is available only to eligible, active borrowers who each have one vote regardless of the amount of stock they own. 12 U.S.C. § 2094. In most transactions, including those in the cases at bar, the notes signed by the borrower include the amounts necessary to purchase the required stock and authorize future automatic advances of credit to maintain the proper stock ratio. The borrower pays interest on these amounts as well as on the principal. As the principal loan amount is reduced, the B Stock is correspondingly retired. (Testimony of Lonnie Wells, Northwest South Dakota Production Credit Association Branch Manager, Hearing, Rapid City, South Dakota, August 28, 1984.)

The debtors in the instant cases assert three arguments in favor of retiring the B

Stock under the plans. First, they maintain that the Farm Credit Act provides for the retirement or cancellation of Class B Stock in the event of default under Subsection (k). Second, even if the right to retire or cancel the stock does not belong to the debtor, the debtor should be allowed to cancel the stock under the provisions of 11 U.S.C. § 1129 which allows for modification or impairment of a creditor's claim as long as the plan meets the fair and equitable standard. Third, and alternatively, they argue that the portion of the loan which provides for the purchase and subsequent future advances for B Stock should be viewed as executory, permitting the debtor the option of rejecting it.

After careful consideration of all the files and pleadings, briefs and arguments of counsel, and the relevant statutory and case law, the Court holds that a debtor may not retire or cancel Class B Participation Stock in a P.C.A. as a part of its plan of reorganization under Chapter 11. The Court's conclusion is supported by the following rationale.

First, the right to cancel or retire Class B Stock upon default is given solely to the lender, P.C.A., by the Farm Credit Act. The exercise of this right by P.C.A. is by no means automatic upon a borrower's default; it is discretionary. 12 U.S.C. § 2094(k). Testimony at a hearing in the instant *Walker* case by P.C.A. Officer Wells indicated that, in his experience, the stock was only retired at the point when the debt was determined to be uncollectible. Practical considerations underpin this policy. Unlike regular corporate stock, the P.C.A. Class B Stock is not readily salable because only qualified, active borrowers may own it. In addition, the P.C.A. is required to maintain a like amount of B Stock in an Intermediate Credit Bank, and this, in turn, determines the amount of money available to the P.C.A. to make additional loans. (Hearing, Rapid City, South Dakota, August 28, 1984.) In a similar case involving stock in a Bank for Cooperatives, the Bankruptcy Court for the District of Puerto Rico analyzed the applicable sections of the Farm Credit Act and concluded that:

[T]he statute [granted] the bank the option to retire, (i.e., redeem) the stock of the bankrupt; the bankrupt, and thus the trustee has no right to demand that the stock be retired—that right, under the statute, does not mature and is not exercisable, except at the bank's option.

*In re Cooperativa Cafeteros De Puerto Rico*, 19 B.R. 732 (Bkrtcy.D.P.R.1982). The United States Supreme Court, in another case involving a Bank for Cooperatives, likewise observed:

It must be remembered, however, that the stock was intentionally given these characteristics by a Congress with definite goals in mind. The legislative history of the Farm Credit Act of 1955 indicates that Congress placed much of the blame for the Bank's inability to repay the capital extended by the Government and to retain private capital on the provision in the 1933 legislation which permitted borrowers to redeem their stock for cash upon paying off their loans. The restrictions on redemption and transferability and the dividend prohibition were designed to obviate this difficulty and to provide both a stable membership and permanent capital, two necessities for the success of any cooperative venture.

*United States v. Mississippi Chemical Corp.*, 405 U.S. 298, 92 S.Ct. 908, 31 L.Ed.2d 217 (1972).

Second, and for many of the same reasons just mentioned, the Court cannot permit the general provisions of 11 U.S.C. § 1129 to override the specific Congressional intent in enacting the Farm Credit Act. The legislative history of the Act indicates that the design of a capital structure utilizing borrower capitalization and participation was intended to remedy the problems inherent in the agricultural lending practices of commercial institutions. Although Congress may have been able to accomplish the same goals through higher interest rates, it chose stock purchases for stability and continuity. Much of the success of the farm credit system has resulted from long-term direct borrower participa-

tion and the integration of the control and management functions. To permit debtors in Chapter 11 reorganization to cancel their B Stock would do more than impair the P.C.A.'s claims in these two cases; it would alter the capital structure of the P.C.A. and would seriously undermine the functioning of the whole farm credit system as envisioned by Congress under the Farm Credit Act.

Finally, the Court is unconvinced that the B Stock portion of the loan contract can be severed and treated as executory. Even though many of the loans involve credit advances and subsequent stock advances, the B Stock requirement is an integral part of the principal loan transaction and cannot be severed without altering the character of the transaction. When viewed as a whole, the transaction cannot be considered executory under accepted definitions. *See, e. g., Jenson v. Continental Financial Corp.,* 591 F.2d 477 (8th Cir. 1979).

This Memorandum Decision constitutes the Court's Findings of Fact and Conclusions of Law in the above-entitled matters pursuant to Bankr.R.P. 7052 and 9014 and F.R.Civ.P. 52. Counsel for the P.C.A., Mr. Nash, is directed to submit a proposed Order and Judgment for each case, consistent with the Court's Findings of Fact and Conclusions of Law and in accordance with Bankr.R.P. 9021, to the Clerk of this Court forthwith.