In re FCX, INC., Employer's Identification No. 560220040, Debtor.

UNIVERSAL COOPERATIVES, INC., Creditor–Appellant,

v.

FCX, INC., Debtor–Appellee,

The National Council of Farmer Cooperatives ("National Council"), Amicus Curiae.

No. 88–1525.

United States Court of Appeals, Fourth Circuit.

Argued June 22, 1988.

Decided Aug. 11, 1988.

James R. Crassweller (Eugene M. War-
lich, Doherty, Rumble & Butler, P.A., on
brief), Gregory Byrd Crampton (Merriman,
Nicholls & Crampton, P.A., on brief), for
creditor-appellant.

William Henry McCullough, Douglas Quinn Wickham (Adams, McCullough & Beard, on brief), for debtor-appellee.

Leslie S. Mead, Associate Gen. Counsel Nat. Council of Farmer Cooperatives, on brief for amicus curiae.

Before PHILLIPS and ERVIN, Circuit Judges, and BUTZNER, Senior Circuit Judge.

JAMES DICKSON PHILLIPS, Circuit Judge:

Universal Cooperatives, Inc. (Universal) here challenges an order of the bankruptcy court, affirmed by the district court on direct appeal, allowing the modification of a confirmed Chapter 11 plan under which FCX, Inc., a debtor of Universal's, was operating. That order authorized FCX to release collateral securing its indebtedness to Universal in satisfaction of Universal's claim. Universal raises three issues: that (1) FCX was not, as a matter of substantive bankruptcy law, entitled to the relief granted by the bankruptcy court, (2) the bankruptcy court did not follow the procedures required for plan modification under the Bankruptcy Code, and (3) even were FCX entitled to release the collateral in satisfaction of Universal's claim, the bankruptcy court should not have valued the collateral at face value. We affirm.

## I

Universal is a non-profit agricultural cooperative association organized under Minnesota law. Minn.Stat.Ann. § 308.05 *et seq.* (West Supp.1988). Universal's members, called patrons, are also cooperatives. FCX, which was organized under the North Carolina Cooperative Marketing Act, has been a patron of Universal since Universal's formation in 1980 through the merger of two other cooperatives. In addition to marketing the products of its own members, FCX purchased farm supplies from Universal, as well as other sources, for resale to those members.

In order to maintain its tax favored status under federal and state law, Universal is required to distribute its annual net income to its members. Universal's by-laws authorize its board of directors to make these distributions, commonly called "patronage refunds" or "patronage dividends," in the form of cash, qualified or non-qualified written notices of allocation, or any combination thereof. A written notice of allocation includes:

> [A]ny capital stock, revolving fund certificate, retain certificate, certificate of indebtedness, letter of advice or other written notice which discloses to the recipient the stated dollar amount allocated to him by the organization and the portion thereof, if any, which constitutes the patronage refund or dividend.

Joint Appendix at 67 (quoting from Universal's by-laws).

Universal historically has made patronage refunds in a combination of cash and certificates of participation ("patronage certificates"). The total amount of the patronage refund to a given member is based on that member's proportionate share of Universal's total business for the year. Pursuant to the tax scheme, Universal takes a deduction against income for the total amount of the patronage distribution, while each member reports as income, and pays taxes on, its individual share of the total. Patronage certificates are valued at face value for both purposes.[1]

Universal's by-laws authorize the redemption of the patronage certificates "on an equitable basis in whole or in part at such time, in such manner and in such order as shall be determined by the Board of Directors." Joint Appendix at 68. Its Articles of Incorporation also grant Universal a first lien on a member's patronage certificates as security for any indebtedness of the member to Universal and, in accordance with this security scheme, vest Universal's board with the discretionary right to set off a member's indebtedness against a member's patronage certificates. The Articles, however, reject any right of a member to have such a setoff made.

---

1. Universal also carries the patronage certificates at face value on its balance sheet.

Since its formation, Universal has periodically redeemed patronage certificates on a first-issued, first-redeemed basis—meaning that the oldest outstanding certificates are redeemed first. To date under this method, only certificates from the pre-merger period, essentially pre–1980, have been redeemed. FCX holds unredeemed certificates in the face value amount of $1,116,129, some of which date back to the pre-merger period.

On September 17, 1985, FCX filed for protection under Chapter 11 of the Bankruptcy Code. On November 1, 1985, Universal filed a proof of secured claim in the amount of $658,887.14 [2] reflecting the account receivable due from FCX to Universal for products purchased by FCX prior to the date of bankruptcy. This indebtedness was secured by FCX's unredeemed patronage certificates.

FCX filed its Disclosure Statement and proposed Plan of Reorganization on June 6, 1986. Neither document listed Universal as an impaired creditor, nor specifically described the proposed disposition of FCX's patronage certificates in Universal. The Plan did indicate that FCX intended to liquidate its investments in the cooperatives of which it was a member and hold the proceeds in a liquidating trust, primarily for the benefit of unsecured creditors and subordinated debenture holders.[3] The Plan also indicated FCX's intent to satisfy "priority claims" from the liquidation of non-operating assets, which included tangible personal property, real estate, inventory items, and FCX's interests in other cooper-

atives. FCX's Plan was confirmed in August 1986.

Some 8 months later, FCX filed a notice of its intent to abandon a portion of its Universal patronage certificates in full satisfaction of Universal's secured claim. Universal objected to the abandonment primarily on the grounds that Universal's by-laws vested its board with sole and absolute discretion to redeem, or set off a member's indebtedness against, outstanding patronage certificates. The parties thereafter filed a stipulation of the facts underlying the issue with the bankruptcy court.

The bankruptcy court then held a hearing on the abandonment issue on June 1, 1987. A question was apparently raised at the hearing as to the appropriateness of abandonment in the circumstances and the court, by letter dated June 5, 1987, informed the parties that it indeed considered "abandonment" an inappropriate remedy. Instead, the court proposed to "decide the issue of whether FCX, through plan modification, may surrender a portion of the Universal patronage certificates to Universal in satisfaction of Universal's secured claim." Counsel for FCX later notified the court that FCX and Universal agreed to request that the court decide the stated issue.[4]

By memorandum opinion and order dated June 23, 1987, the bankruptcy court authorized FCX to turn over to Universal that amount of the patronage certificates, valued at face value, as was necessary to satisfy fully Universal's claim. The bankruptcy court's order was upheld by the district court which found that (1) the modi-

**2.** Since filing its proof of claim, Universal has at least once ordered the redemption of a portion of FCX's patronage certificates—$37,416 in August 1986, and applied the amount against Universal's claim. The parties stipulated to the bankruptcy court that the balance due on Universal's claim as of June 1, 1987 was $621,471.14. FCX apparently contends that Universal redeemed another approximately $37,000 in August 1987. It is not clear whether this amount was also applied to Universal's claim.

**3.** As to this last class of creditors, the Plan specifically provided that: "within thirty (30) days of the date of confirmation, the trustee [of the liquidating trust] shall distribute to holders

of subordinated debentures, certificates of participation reflecting the face amount of the prior subordinated debenture." Joint Appendix at 28.

**4.** At this stage of the case, there remains substantial disagreement over the scope of the agreement of the parties that was reported to the bankruptcy court. Universal contends that it consented only to the bankruptcy court's decision of the threshold question whether FCX could even seek plan modification at that time, not the merits of the actual modification sought. This is one of the bases of Universal's second point on appeal.

fication granted was supported by substantive bankruptcy law, (2) the certificates were properly valued at face value, and (3) while the modification procedure did not strictly comply with the bankruptcy code's requirements, "there was substantial compliance and a waiver by the parties of strict compliance...."

This appeal followed.

## II

Universal first contends that the Bankruptcy Code provides no authority for the bankruptcy court essentially to order Universal's board to exercise its discretion to set off FCX's indebtedness to Universal against FCX's patronage certificates. Resolution of this issue requires a two-step analysis involving both state and federal law.

The filing of a debtor's petition in bankruptcy creates an estate comprised of the property listed in 11 U.S.C. § 541(a), including "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Despite its broad definition of those interests of the debtor that become property of the estate, see In re Ryan, 15 B.R. 514, 517 (Bkrtcy.D.Md.1981) (noting that § 541(a) is "broad and all-embracing"); see also McLean v. Central States, Southeast and Southwest Areas Pension Fund, 762 F.2d 1204 (4th Cir.1985) (same as to § 541(a)(1)), neither § 541(a), nor any other Bankruptcy Code provision, answers the threshold questions of whether a debtor has an interest in a particular item of property and, if so, what the nature of that interest is. In re Farmers Markets, Inc., 792 F.2d 1400, 1402 (9th Cir.1986); 4 Collier on Bankruptcy ¶ 541.02, at 541–11 (15th ed. 1985) (The Bankruptcy Code does not "provide[] any rules for determining whether the debtor has an interest in property....."). The estate under § 541(a) succeeds only to those interests that the debtor had in property prior to commencement of the bankruptcy case. Creasy v. Coleman Furniture Corp., 763 F.2d 656, 662 (4th Cir. 1985); see also Moody v. Amoco Oil Co., 734 F.2d 1200, 1213 (7th Cir.1984) ("[W]hatever rights a debtor has in property at the commencement of the case continue in bankruptcy—no more, no less."). The existence and nature of a debtor's, and hence the estate's, interest in property must be determined by resort to nonbankruptcy law, In re Polycorp Assoc., Inc., 47 B.R. 671, 673 (Bkrtcy.N.D.Cal.1985); see generally 4 Collier on Bankruptcy ¶ 541.01, at 541–10, 10–13 (The "existence and nature of the debtor's interest in property ... are determined by nonbankruptcy law," usually state law.)—either federal law, see, e.g., In re Massengill, 73 B.R. 1008 (Bkrtcy.E. D.N.C.1987) (debtor's interest in property governed by Farm Credit Act of 1971, 12 U.S.C. § 2001, et seq.), or, as is the case here, state law. See, e.g., In re N.S. Garrott & Sons, 772 F.2d 462, 466 (8th Cir. 1985) ("The nature and extent of the debtor's interest in property are determined by [Arkansas] state law.").

There is no dispute that FCX has an interest in the patronage certificates and that such interest became property of the bankruptcy estate upon the filing of FCX's Chapter 11 petition. See, e.g., In re Schauer, 62 B.R. 526, 529 (Bkrtcy.D.Minn. 1986) (recognizing that patronage equity held by a debtor in a cooperative becomes property of the estate); In re Lamar Farmers Exchange, 76 B.R. 712, 716 (Bkrtcy.W.D.Mo.1987) (same). There is also no dispute that under Minnesota state law, and specifically Universal's by-laws, FCX's interest is limited; the certificates are not currently due and payable or payable on FCX's demand. Rather, the certificates represent a contingent entitlement; FCX's right to a share of Universal's profits payable at such time, and in such increments, as Universal's board determines in the exercise of its discretion. See Atchison County Farmers Union Coop. Ass'n v. Turnbull, 241 Kan. 357, 736 P.2d 917, 921 (1987) (characterizing patronage equity in a cooperative as a contingent interest not immediately payable that vests when the cooperative board exercises its discretion and determines that the equity should be redeemed). As FCX does not contend

that it is not bound by the by-laws [5] or that they are somehow invalid or unenforceable against FCX under state law, the estate's interest is equally limited. *See* 4 *Collier on Bankruptcy* ¶ 541.01, at 541–6 ("To the extent that an interest is limited in the hands of the debtor, it is, therefore, equally limited in the hands of the estate." (Footnote omitted.)). Were this the final point in our analysis, Universal would be entitled to judgment in its favor. As we noted, however, our analysis does not end with the characterization of the property interests of the estate under state law.

Because "Congress may ... abrogate state law entitlements in bankruptcy pursuant to its Bankruptcy Clause Power, U.S. Const. art. I, § 8, cl. 4," *In re Farmers Markets*, 792 F.2d at 1403, we must ask further whether there exists any conflicting bankruptcy law which overrides the discretionary power over the redemption of the patronage certificates vested in Universal's board by state law and its by-laws.[6] FCX here contends that § 1123(a)(5)(D) preempts the restrictive provisions of Universal's by-laws and allows it to release the patronage certificates in satisfaction of Universal's claim.

Section 1123(a)(5)(D) provides, among other things, for the distribution of collateral which is property of the estate to a party holding a security interest in the collateral in satisfaction of that party's secured claim. Prior to 1984, § 1123(a)(5)(D) read as follows:

(a) A plan shall—

. . . . .

(5) provide adequate means for the plan's execution, such as—

. . . .

(D) sale of all or any part of the property of the estate, either subject to or free of any lien, or the distribution of all or any part of the property of the estate among those having an interest in such property of the estate....

In 1984, the opening clause of § 1123(a) was amended to read: "Notwithstanding any otherwise applicable nonbankruptcy law, a plan shall...."[7] By its plain language then, § 1123(a)(5)(D) overrides nonbankruptcy law restrictions on the distribution of collateral to satisfy a claim secured by the same. Accordingly, § 1123(a)(5)(D) supersedes the discretionary power over surrender of the patronage certificates bestowed on Universal's board by its by-laws.

For its part, Universal reminds us of *In re Schauer*, 62 B.R. 526 (Bkrtcy.D.Minn. 1986), *aff'd*, 835 F.2d 1222 (8th Cir.1987), which held that state law restrictions on the transfer of patronage certificates similar to those at issue here were not preempted by the Bankruptcy Code. *In re Schauer*, however, is distinguishable on two grounds. First, the trustee there did not rely on § 1123(a)(5)(D), but argued that

---

**5.** While we need not address the issue, we are in general agreement with those decisions characterizing the by-laws and Articles of Incorporation of a cooperative as a contract between the cooperative and its members. *See, e.g., Atchison County*, 736 P.2d at 921 ("A member or a stockholder of a cooperative association is bound by the bylaws...."); *In re Schauer*, 62 B.R. at 531 (noting that members of a cooperative consent to be governed by the cooperative's by-laws and policies when they become members).

**6.** For example, in *In re Schauer*, 62 B.R. 526 (Bkrtcy.D.Minn.1986), aff'd 835 F.2d 1222 (8th Cir.1987), both the bankruptcy court and the Eighth Circuit undertook this two-step analysis, finding that (1) a Chapter 7 trustee could not transfer the debtor's patronage certificates in a cooperative without the board's permission where the cooperative's by-laws vested the board with sole discretion over the issue, and

(2) state law restrictions on the estate's interest were not preempted by various provisions of the Bankruptcy Code cited by the trustee.

This same two-step analysis applies when the estate's property interest is governed by nonbankruptcy federal law. *See, e.g., In re Walker*, 48 B.R. 668 (Bkrtcy.D.S.D.1985) (Bankruptcy Code does not override provisions of Farm Credit Act which grants a production credit association sole authority to redeem stock held by a member).

**7.** We do not understand the amendment to have effected a substantive change in the prior law. *See* 124 Cong.Rec. 34,005 (1978) (Senate debate on compromise bill submitted for final House approval) (explaining that under § 1123(a)(5), "[i]f the plan is confirmed, then any action proposed in the plan may be taken notwithstanding any otherwise applicable nonbankruptcy law....").

§ 363(b)(1) [8] and § 704 [9] provided authority for the trustee to sell patronage certificates without the issuing cooperative's approval as required under the cooperative's by-laws. Second, and more importantly, § 363(b)(1) and § 704 are substantively different from § 1123(a)(5)(D). Neither § 363(b)(1), nor § 704, is an empowering statute in the sense that new rights or powers for dealing with the property of the estate are created. Section 704 is simply a directive to the trustee of its duties; § 363(b)(1) permits the trustee to "use, sell, or lease" property of the estate but evinces no intent to enlarge the trustee's rights to take such actions beyond the debtor's pre-bankruptcy rights. As the Eighth Circuit noted in *In re Schauer*, § 363(b)(1) and § 704 are no more than "enabling statutes that give the trustee the authority to sell or dispose of property if the debtor[ ] would have had the same right under state law." *In re Schauer*, 835 F.2d at 1225. Stated differently, these sections provide a means within the context of a bankruptcy proceeding for the exercise of a debtor's pre-bankruptcy rights to dispose of its property.

In contrast, § 1123(a)(5) is an empowering statute. As stated by Collier: "The alternatives set forth in § 1123(a)(5) are self executing. That is, the plan may propose such actions notwithstanding non-bankruptcy law or agreements." 5 *Collier on Bankruptcy* ¶ 1123.01, at 1123–10. Section 1123(a)(5)(D) then does not simply provide a means to exercise the debtor's pre-bankruptcy rights; it enlarges the scope of those rights, thus enhancing the ability of a trustee or debtor in possession to deal with property of the estate.

Based on this analysis, we believe that the bankruptcy court had the authority to authorize FCX to surrender patronage certificates in satisfaction of Universal's secured claim.[10]

**8.** *Section 363(b)(1) provides that: "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."*

**9.** Section 704 provides that:

The trustee shall—

(1) collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest;

(2) be accountable for all property received;

(3) ensure that the debtor shall perform his intention as specified in section 521(2)(B) of this title;

(4) investigate the financial affairs of the debtor;

(5) if a purpose would be served, examine proofs of claims and object to the allowance of any claim that is improper;

(6) if advisable, oppose the discharge of the debtor;

(7) unless the court orders otherwise, furnish such information concerning the estate and the estate's administration as is requested by a party in interest;

(8) if the business of the debtor is authorized to be operated, file with the court, with the United States trustee, and with any governmental unit charged with responsibility for collection or determination of any tax arising out of such operation, periodic reports and summaries of the operation of such business, including a statement of receipts and disbursements, and such other information as the United States trustee or the court requires; and

(9) make a final report and file a final account of the administration of the estate with the court and with the United States trustee.

The trustee in *In re Schauer* specifically focused on § 704(1).

**10.** In fact, Universal apparently concedes the correctness of our analysis of § 1123(a)(5)(D). In its opening brief, Universal argues that, because the estate had no greater rights to dispose of the patronage certificates than FCX, the bankruptcy court lacked the power to authorize the surrender of patronage certificates in satisfaction of Universal's claim without the approval of Universal's board. Universal's position is different in its reply brief where it acknowledges "that 11 U.S.C. § 1123(a)(5)(D) authorizes a debtor, within the context of the provisions of a confirmed plan, to satisfy secured claims by surrender of the collateral securing the claim." Reply Brief for Universal at 4. While conceding this threshold question, Universal continues to challenge any surrender of less than all of the certificates: "In this case, the collateral consists of *all* the certificates of participation issued to FCX by Universal. Indeed, if FCX were prepared to surrender to Universal all of the collateral securing Universal's claim, Universal's claim could be satisfied." Reply Brief for Universal at 4 (emphasis in original).

Section 1123(a)(5)(D), however, authorizes the surrender to a secured creditor of "all or any part" of the collateral securing its claim. Because a creditor is only entitled to realize the

### III

Universal next contends that the bankruptcy court did not enforce the formal requirements for plan modification under the Bankruptcy Code and that this error requires reversal. Universal raises a number of points, most notably that FCX did not provide the appropriate notice of, or information related to, its proposed modification and that the bankruptcy court did not properly evaluate the modified plan against the requirements of § 1129.

The relevant facts are as follows: (1) on May 12, 1987, well after plan confirmation, FCX filed a notice proposing to abandon so much of the patronage certificates as necessary to satisfy Universal's claim, (2) Universal filed an objection to the proposal on May 25, 1987, (3) a hearing was held on June 1, 1987, (4) at the hearing the question apparently arose as to whether the issue was more properly handled under § 1123 and § 1129, (5) the court sent the parties a June 5, 1987 letter including a copy of *In re Massengill,* 73 B.R. 1008 (Bkrtcy.E.D.N.C. 1987), and proposing to decide the issue "whether FCX, through plan modification, may surrender a portion of the Universal patronage certificates to Universal in satisfaction of Universal's secured claim," (6) the parties communicated their agreement that the court should address this issue to the court on June 9, 1987, and (7) on June 23, 1987, the court ruled that FCX could so modify its plan and that the certificates were to be valued at face value.

■ The requirements for post-confirmation plan modification are found in 11 U.S.C. § 1127(b). That section also incorporates the requirements of 11 U.S.C. §§ 1122, 1123, and 1129.[11] Essentially, the modification requirements provide for (1) notice of a proposed plan modification, (2) notice of the information necessary for a creditor to assess the nature and impact of the modification, (3) a hearing on the propriety of the proposed modification, (4) an opportunity for an impaired creditor to object to the modification, and (5) an assessment by the bankruptcy court that the modified plan meets the requirements of § 1129.

■ Even assuming that all of the requirements for formal plan modification were not rigidly complied with here, we do not believe this justifies reversal and remand here—for several reasons.

First, FCX's abandonment notice provided Universal with notice of the essential nature of the modification ultimately effected—a surrender of patronage certificates in satisfaction of Universal's claim—as well as FCX's proposal to value the certificates at face value. The bankruptcy court later notified Universal of the exact Bankruptcy Code provisions implicated, the issue it proposed to decide, and the main precedent the court intended to rely on—*In re Massengill.*

Second, the bankruptcy court held a hearing attended by both FCX and Universal. Though the hearing was ostensibly called to discuss the abandonment issue, Universal's objections to abandonment filed prior to the hearing set out a broad general objection to any disposition of the certificates in conflict with its by-laws. The bankruptcy court's opinion makes clear that the court understood Universal's more general objection as well as its objection to any valuation of the certificates at other than present value. Further, there is no indication in the record that the bankruptcy court restricted either party in arguing its

value of its secured claim, any surrender of collateral must be accompanied by a valuation of the collateral. If the valuation shows a creditor to be undersecured, it may have an unsecured claim against the estate for the shortfall remaining after surrender. If the creditor is oversecured, it can only receive part of the collateral in satisfaction of its claim. The key question here then is not whether FCX can surrender patronage certificates in satisfaction of Universal's claim, but exactly what amount of

the certificates must be surrendered to satisfy fully that claim. We take up the valuation issue in Part IV.

**11.** Section 1127(c) also provides that: "The proponent of a modification shall comply with section 1125 of this title with respect to the plan as modified." Section 1125 governs the disclosure necessary for post-petition solicitation of acceptance or rejection of the plan from those entitled to vote on the plan.

position on either the surrender or valuation issues.

Finally, there is Universal's claim that we must remand for the bankruptcy court to determine whether the modified plan can be "crammed down" under § 1129(b) over Universal's objection. We believe the bankruptcy court has already made this determination as its opinion phrases the issue before the court as whether FCX may surrender patronage certificates in satisfaction of Universal's claim "pursuant to 11 U.S.C. §§ 1123(a)(5)(D) and 1129(b)." And in its opening brief Universal concedes that the bankruptcy court at least implicitly made this determination.

We perceive the real dispute here to be Universal's claim that the valuation of the certificates at face value does not comply with the requirement of § 1129(b)(2)(A)(iii) that Universal receive the "indubitable equivalent" of its claim in order for the modified plan to be "crammed down" over its objection. Its submissions to this court

on appeal make clear that the valuation question would be the focal point of the further hearing Universal requests.

Again, we see no reason to reverse and remand for further proceedings on this issue. Universal had an opportunity to object to the valuation of the certificates at face value and to state its argument in support of that objection: that Universal's board has discretion to order redemption of the certificates, that it has historically redeemed the certificates over time on a first-issued, first-redeemed basis, and that, therefore, the present value of the certificates is not equal to their face value, with the older certificates being worth more than newer ones since they will be redeemed sooner. We see nothing in either the bankruptcy or district court opinions to lead us to believe that these courts would rule differently on the valuation issue were they to confront it again, even with the benefit of additional evidence.[12] We thus

---

**12.** We question whether, even as a matter of bankruptcy procedure, Universal is entitled to the further hearing it requests.

Section 102 sets out several "rules of construction" for the Bankruptcy Code. For the phrase "after notice and a hearing," § 102(1) provides:

In this title—

(1) "after notice and a hearing," or a similar phrase—

(A) means after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances; but

(B) authorizes an act without an actual hearing if such notice is given properly and if—

(i) such a hearing is not requested timely by a party in interest; or

(ii) there is insufficient time for a hearing to be commenced before such act must be done, and the court authorizes such act....

11 U.S.C. § 102(1). This rule of construction applies to the notice and hearing requirement for plan modification in § 1127(b).

Universal had notice of FCX's proposal to satisfy Universal's claim by surrendering patronage certificates. While Universal's objection to the proposed action might be tantamount to a request for a hearing, the bankruptcy court held a hearing on the issue on June 1, 1987. At that hearing, a question arose as to the appropriate method by which FCX could proceed with its proposal. After the hearing, the court notified the parties that it considered plan modification the appropriate procedure. Thereafter, the parties agreed that the court should decide whether FCX could take its proposed

action as a plan modification. Universal never requested a further hearing.

While Universal contends that it never consented to the bankruptcy court deciding the substantive issue under § 1123(a)(5)(D) and § 1129, the record indicates otherwise. The bankruptcy court's letter to the parties read in full as follows:

Dear Messrs. Grabiel [General Counsel for Universal] and McCullough [Counsel for FCX]:

Enclosed is an opinion I entered today [June 5, 1987] which may have a bearing on the dispute between FCX, Inc. and Universal Cooperatives, Inc.

As I mentioned from the bench I do not believe abandonment is the appropriate remedy and my inclination is to deny that request.

I infer from Mr. Grabiel's letter that Universal would like me to address the substantive issue rather than prolonging that determination.

Accordingly, I will proceed to decide the issue of whether FCX, through plan modification, may surrender a portion of the Universal the patronage certificates [sic] to Universal in satisfaction of Universal's secured claim.

If I have misconstrued Mr. Grabiel's letter, please let me know immediately.

If the parties wish to discuss this further, a telephone conference call can be arranged.

Very truly yours,
s/A. Thomas Small
Bankruptcy Judge

The letter clearly indicates the court's intent to decide the substantive issue here. The court

now turn ourselves to that specific issue.[13]

## IV

■ Universal contends that if it is forced to accept patronage certificates in satisfaction of its claim, it is entitled to value the certificates at present value.

As just noted, Universal argues that the present value format is the only method of valuing the certificates to be surrendered that will allow Universal to realize the "indubitable equivalent" of its claim as required by § 1129(b)(2)(A)(iii). In support, Universal cites *In re Cosner*, 3 B.R. 445 (D.Ore.1980), which acknowledged that by-law restrictions on the redemption of patronage equity credits in a cooperative affect their value, and also cites several cases adopting the proposition that the concept of present value is relevant to the "indubitable equivalent" inquiry.

The bankruptcy court here relied on its decision in *In re Massengill*, 73 B.R. 1008 (Bkrtcy.E.D.N.C.1987), in concluding that the certificates should be valued at face value. In that case, Chapter 12 debtors sought to release stock in the Federal Land Bank of Columbia (FLB) and the South Atlantic Production Credit Association (PCA) in satisfaction of secured claims held by those entities. The FLB and PCA pro-

vided credit to farmers, who were required to be stockholders under the Farm Credit Act. After concluding that the Bankruptcy Code preempted restrictions on stock redemption imposed by the Farm Credit Act, the court turned to the valuation issue. The FLB and PCA argued that the stock should be valued at present value because the stock was historically redeemed only after a stockholder had repaid its indebtedness. The court flatly rejected this argument:

> [B]oth the [Federal] Land Bank and PCA have the right in their discretion to immediately redeem the stock. But, whether or not the stock is in fact redeemed is not important for purposes of determining the amount by which the secured claim of the Land Bank and PCA should be reduced. What is important is that Land Bank and PCA have the right in their discretion to redeem the stock, and if they elect not to exercise that right then they, not the debtors, should bear any economic loss which arises from that decision.

*In re Massengill*, 73 B.R. at 1013.

We find the analysis in *In re Massengill* persuasive. Universal has the discretion under nonbankruptcy law to choose cur-

---

also gave the parties an opportunity to respond prior to its decision. Nevertheless, the only response from Universal was its agreement, communicated through FCX, for the court to proceed. As Universal did not request a further hearing even after receiving notice of the court's proposed decision of the modification issue, under § 102(1)'s rule of construction, the court was not required to hold one.

**13.** By our decision, we do not mean to discount the importance of the Bankruptcy Code's formal plan modification requirements. Those requirements provide important safeguards for the interested parties and should be faithfully observed in bankruptcy proceedings. In this case, however, a number of circumstances have come together that militate against reversal on technical procedural grounds.

Our decision in *Goodman v. Phillip R. Curtis Enterprises, Inc.*, 809 F.2d 228 (4th Cir.1987), is not to the contrary. Though in *Goodman* we reversed various orders of the bankruptcy and district courts for failure to comply with the proper procedures for plan modification, we implied that some procedural irregularities

might not be so egregious as to warrant setting aside a modification order. *Goodman,* 809 F.2d at 233 (The "procedural irregularities here were so egregious that the challenged orders must be held invalid."). More importantly, it was not at all clear in *Goodman* that further proceedings in accordance with required procedural formalities would produce the same result. This was because the bankruptcy and district courts in *Goodman* essentially had *sua sponte* ordered plan modification, though § 1127(b) allows only the proponent of a plan or a reorganized debtor to initiate post-confirmation modification. Under the circumstances of the case, it was not at all clear that a proper party would seek modification on remand.

Finally, we also intimated in *Goodman* that where responsibility for procedural irregularities rests with any of the adversary parties, a resulting modification order might not be found invalid. *Goodman,* 809 F.2d at 234. Universal agreed to the bankruptcy court's decision of the substantive bankruptcy issue here and should not now be able to avoid the impact of that court's decision by raising procedural irregularities resulting from that request.

rently to redeem the patronage certificates or to delay redemption to some future date. It necessarily exercises this discretion each day with the effect that a decision to redeem on a given day results in the certificates being valued on that day at face value, while a decision to delay redemption indefinitely results in the certificates having on that day a present value uncertainly discounted below face value. Section 1123(a)(5)(D) provides authority for the bankruptcy court to order current redemption of, or setoff against, collateral to satisfy a secured creditor's claim, even absent the authorization of that creditor necessary under nonbankruptcy law. Where a creditor seeks to force an uncertainly discounted present value upon collateral—in this case the patronage certificates—simply by deferring setoff from day to day rather than effecting it immediately by redemption as it might, we believe that § 1123(a)(5)(D) authorizes the bankruptcy court to forestall that effort and require immediate setoff. Otherwise the creditor would be allowed to benefit at the expense of the bankrupt's estate. Directing immediate setoff, hence valuation at face value, gives the creditor exactly the amount it would receive had it voluntarily chosen to agree to the debtor's request for immediate setoff by redemption. This, we think, meets the "indubitable equivalent" standard of § 1129(b)(2)(A)(iii).[14]

AFFIRMED.

**14.** We find further support for our ruling in Universal's Articles of Incorporation. Though Universal's Articles give it a first lien on all of a member's patronage certificates, those Articles appear to us to authorize cancellation of, or setoff against, only an equal face valued amount of such certificates in satisfaction of the lien. In essence then, Universal's lien extends to a face valued amount of the certificates equal to a member's indebtedness, which is exactly the amount of the certificates ordered to be surrendered here. It would be anomalous if Universal were allowed to value the certificates differently depending on whether it ordered a setoff or cancellation or was ordered effectively to take the same act by a bankruptcy court.

We note that the other requirements of § 1129 must also be met, and decide only whether the valuation of patronage certificates at face value in the circumstances of this case satisfies the "indubitable equivalent" standard of § 1129(b)(2)(A)(iii). Section 1129(b)(1) requires a more general finding that the plan is "fair and equitable," of which indubitable equivalence is a specific aspect, to be confirmed. Were, for example, a cooperative to establish that forced redemption of collateral threatened its continuing viability, or the status of its members, we question whether this standard could be met.